OLCOTT *v.* SALT BAYOU DRAINAGE DISTRICT.

Opinion delivered July 12, 1920.

1.   DRAINS—NOTICE OF ASSESSMENT.—Under Special Acts 1919, No. 658, creating Salt Bayou Drainage District, which provided for notice of assessments by publication for two weeks, and that any landowner aggrieved shall present his complaint to the circuit court at the first session held more than ten days after publication, land owners are entitled to full ten days after the last day of publication in which to determine whether they have any complaints to make.

2.   DRAINS—MODE OF PRESENTING COMPLAINT.—Under Special Acts 1919, No. 658, creating a drainage district, and providing for publication of assessments, and authorizing any aggrieved land owner to "present" his complaint to the circuit court at the first session held more than ten days after publication of notice, it is

not necessary that the court be in session at the time designated for presenting the complaint; it being sufficient to file a written complaint with the clerk.

Appeal from Jefferson Chancery Court; *John M. Elliott*, Chancellor; reversed.

*S. J. Hunt*, for appellant.

The court erred in sustaining the demurrer. The day named by the clerk in the notice *must be more than ten days after the publication of said notice and* (2) *the Jefferson County Court must be in session* on the day named in said notice to afford an opportunity to those who desire to do so an opportunity to be heard. Both these propositions are jurisdictional under act 658, Acts 1919, § 5; 103 Ark. 571; 132 *Id.* 144.

*Rowell & Alexander*, for appellees.

Full two weeks' notice of the filing of the assessments was given by the county clerk by proper publication and the circuit court was actually in session on the day named in the notice and the court properly sustained the demurrer.

WOOD, J. Salt Bayou Drainage District was created by act 658 of the special acts of 1919, page 972. Section 5 of the act provides, among other things, that the commissioners of the district shall assess the benefits to accrue to each tract of land included in the district. Among other provisions of section 5 are the following:

"When their assessment is completed the commissioners shall subscribe said assessment and deposit the books containing said assessment with the county clerks in which said lands are situated where they shall be kept and preserved as a public record. Upon the filing of said assessments the county clerks shall give notice of the fact by publication weekly for two weeks in some newspaper issued in the counties in which said lands are situated. Said notice shall give a description of the lands assessed for drainage purposes in said district; that the owners of said land, if they desire, may appear before the Jef-

ferson County Circuit Court on a certain day (naming the day) and present complaints, if they have any, against the assessment of any lands in said district.

"Any owner of real property within the district who conceives himself to be aggrieved by the assessment of benefits or damages or deems that the assessment of any land in the district is inadequate, shall present his complaint to the Jefferson County Circuit Court at the first regular, adjourned or special session held more than ten days after the publication of said notices, and the court shall consider the same and enter its findings thereon, either confirming such assessment or increasing or diminishing the same; and its findings shall have the force and effect of a judgment, from which an appeal may be taken within twenty days, either by the property owners or by the commissioners of the district."

The appellant, a land owner in the district, brought this action against the appellees, the district and its commissioners and alleged that they (commissioners) completed and certified to their assessments on the 15th day of November, 1919; that the assessment book containing the assessment against the lands in Jefferson County was filed in the office of the county clerk of Jefferson County on the 18th day of December, 1919, and the assessment book containing the assessment against the lands in Arkansas County was filed in the office of the county clerk of Arkansas County on the 19th day of December, 1919; that the clerk of the county court of Jefferson County published the notice of assessments required in said section 5 of said act in the Pine Bluff Commercial, a daily newspaper published regularly in Jefferson County, Arkansas, for two weekly insertions on the 19th and 26th days of November, 1919; that the county clerk of Arkansas County published the notice of assessments in the Stuttgart Free Press, a newspaper regularly published in Arkansas County, Arkansas, for two weekly insertions on the 20th and 27th days of November, 1919; that it was provided in said notices that the owners of said lands, town lots, public and corporate roads, railroads, tram-

roads and other improvements on the lands embraced within the boundaries of the district, if they desired, might appear before the circuit court of Jefferson County, Arkansas, on the 6th day of December, 1920, and present complaints, if they had any, against the assessment of any said lands, town lots, public and corporate roads, railroads, and tramroads in said district, that the date named in said notice was less than ten days after the last publication of said notice; that the circuit court of Jefferson County was not in session on the said 6th day of December, 1919, and that this plaintiff had no opportunity to present complaints to the said court against the assessment of benefits against his said lands.''

After alleging that the assessment of benefits against his lands were excessive, exorbitant, and discriminatory and that the commissioners were proceeding, and would proceed, unless restrained, to pledge the assessment and levy a tax to pay for the improvement, and that he (appellant) had no adequate remedy at law, the appellant prayed that the commissioners be perpetually restrained from pledging this assessment of benefits and levying a tax for the purpose of paying the same ''without first advertising a hearing thereon as provided by law and for all other proper relief.''

Appellees filed a general demurrer to the complaint, which was sustained by the court. A judgment was entered dismissing the complaint, from which is this appeal.

Two questions are presented. *First.* Must full ten days elapse after the last day of the publication of the notices and the day named in the notices when the land owners may appear and present their complaints against the assessment?

The statute contemplates that the land owners shall have full ten days after the last day of publication in which to determine whether they have any complaints to make against the assessment of benefits on file with the county clerk. This time was doubtless deemed necessary by the Legislature for the land owners to make investigation of the facts and to prepare and present to

the circuit court such objections as they might have, if any, to the assessment. The plain language, "held more than ten days after the publication of such notices," shows that such was the intention of the Legislature. The county clerks are required to give notice of the filing of assessments "weekly for two weeks" in some newspaper issued in the counties in which said lands are situated. It would be doing violence to the language of the statute to say that the land owner has notice ten days after the first weekly notice appears. If the Legislature had intended that the land owner should have only ten days' notice from the day the first weekly notice appeared then it would have been wholly unnecessary to require two weekly notices. In a matter of such great concern to the landowners, the Legislature deemed it expedient to provide for not only one weekly publication but for two.

The words, "publication of such notices," therefore, clearly refer to the publication weekly for two weeks, not one, and there must be full ten days after the last weekly publication.

*Second.* Must the Jefferson County Circuit Court actually be in session on the day named in the notices?

This is not necessary. The county clerks under the statute are required to name a certain day, and the day named must be a day of the first regular, adjourned, or special session held more than ten days after the publication of the notices. It devolves upon the county clerks before they give the notices to ascertain when the first regular, adjourned, or special session of the Jefferson County Circuit Court will be in session after the full ten days has elapsed from the day of the last weekly publication and to fix in their notice a certain day of the particular term whether it be regular, adjourned, or special, "when the owners of land, if they desire, may appear before the Jefferson County Circuit Court * * * and present complaints, if they have any, against the assessment of any lands in said district."

It will be observed that the property owners on the day named may "present complaints." There is no re-

quirement that the complaints shall be heard on the day when they are presented. On the contrary, the intention of the lawmakers was to allow land owners who considered themselves aggrieved by the assessment to appear on the day named in the circuit court if same were in session and present their complaints orally or in writing against the assessment. If the court were not in session on the particular day named, or if in any session the exigencies of the business of the court prevented the hearing of the complaints of land owners on that day, then such complaints might be reduced to writing and filed with the clerk or noted by the court on its docket as presented, and the same could then subsequently be called up and passed upon by the court in the regular order of its business.

It occurs to us that the word "present" as used in this statute has the same meaning as the word "file," and was intended to prescribe the usual method by which a party aggrieved may have his complaint heard by the circuit court. This may be done under the statute by a written complaint or by motion if the court be in session on the day when the aggrieved party presents his complaint.

It follows that the court erred in sustaining the demurrer. The judgment is, therefore, reversed, and the cause remanded with directions to overrule the demurrer.